[Cite as *State v. Kmosko*, 2025-Ohio-2433.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                :

                              :    Case No. 23CA4

    Plaintiff-Appellee,    :

                              :

    v.                       :

                              :

MATTHEW W. KMOSKO,    :    <u>DECISION AND JUDGMENT ENTRY</u>

                              :

    Defendant-Appellant.    :    **RELEASED: 07/01/2025**

                              :

_____

<u>APPEARANCES</u>:

L. Scott Petroff, Athens, Ohio, for appellant.

Jamarcus Macartney, Prosecuting Attorney, City of Nelsonville Prosecutor's Office, Nelsonville, Ohio, for appellee.

_____

Wilkin, J.

{¶1}    This is an appeal from an Athens County Municipal Court judgment entry that convicted appellant Matthew W. Kmosko ("Kmosko") of menacing, a fourth-degree misdemeanor. On appeal Kmosko, who was originally charged with aggravated menacing, maintains that the trial court erred by improperly granting the State's motion for a lesser included offense of menacing. In addition, Kmosko contends the State engaged in prosecutorial misconduct by making improper comments during closing argument and that these comments resulted in prejudice. After reviewing the parties' arguments, the record, and the applicable law, we find the trial court did not abuse its discretion in instructing the jury on a lesser included offense of menacing. Further, we find that although the special prosecutor's remarks made during closing were

inappropriate, they did not prejudicially affect Kmosko's substantial rights.  Therefore, we affirm the trial court's judgment of conviction.

BACKGROUND

**{¶2}** On July 14, 2022, a complaint was filed in the Athens County Municipal Court charging Kmosko with aggravated menacing in violation of R.C. 2903.21. Kmosko entered a not guilty plea and several pretrial hearings were held.  Prior to a final pretrial conference held on January 24, 2023, the State orally requested a lesser included offense jury instruction for menacing.  After the State made its oral request for the menacing instruction, Kmosko objected, stating that he intended to present an "all-or-nothing" defense and further asserted that the offense of menacing was included in the State's settlement offer, which he rejected at pretrial hearings.  During the discussion, defense counsel did not specifically argue that the evidence would not support the instruction.  At the time, the trial court reasoned that whether the lesser charge was part of a negotiation offer does not make it inappropriate for inclusion as an option for the jury.  At that final pretrial, the trial court did not inquire of the parties as to a proffer of what the evidence would be.  Even so, it determined that a lesser included instruction was appropriate in the circumstances.

**{¶3}** The case came on for trial on January 26, 2023.  The State called two witnesses.  First to testify was the victim, Caden Cox ("Cox").  Cox performed customer service at the student center at Hocking College including cleaning two or three days a week, performing duties like cleaning mirrors and sinks.

**{¶4}** On May 12, 2022, Cox was performing his regular duties that day with Kmosko.  After he had lunch, Kmosko approached him in the bathroom.  Kmosko,

whose left hand was in a cast or sling, had a black-handled knife with a silver blade in his right hand which he pointed at Cox' chest and said, "get your fucking job done!" Kmosko was standing about four feet away from Cox.  Kmosko scared Cox; Cox was afraid Kmosko would hurt him with the knife, that he might kill him.  Cox also demonstrated how Kmosko held the knife while standing close to him.  After that, Kmosko called back on the telephone and said, "Hey [Cox], I can see you, do your job!" Cox testified that even at the time of trial, he was "so scared right now."  Three days after the incident, Cox went to the Hocking College Police Department with his parents and talked to Officer [now deputy] Zayne Preston ("Preston").

{¶5}    Preston testified next.  He stated that a few days after the incident, Cox told Preston about what happened at the college.  Cox told Preston that Kmosko pointed a black and silver knife at him, while yelling at him.  Cox told Preston more than once that he was afraid for his life—that he thought he was going to be stabbed.  Cox told Preston the knife was a folding pocket knife, and the blade was open, pointing at him.

{¶6}    When Preston talked to Kmosko, he admitted that he normally carries a knife to work, but he did not believe he had one that day.  Kmosko later said he may have had a knife in his bag.  He said he normally carried a camo and silver smaller pocket knife, which was a fairly small knife.  When Preston interviewed Kmosko, he showed him the video of the incident.  Kmosko acknowledged that something was in his hand at the time.  Kmosko later said he had a tool to open the paper towel dispenser lid. He also said that the object he had in his hand was a screwdriver without a handle on it.

He then said that it could have been a can opener in his hand. Thus, Kmosko's statement to Preston was inconsistent.

{¶7} At trial, in addition to the testimony of Cox and Preston, the State introduced a video and screenshots of the incident. On the video, Kmosko can be seen leaving the bathroom with a long metallic object in his hand, which looked to be a knife that was not in his hand before he entered the bathroom. The screenshots show Kmosko with a sharp or pointed metallic object in his hand, which looked consistent with a knife. Preston emphasized that Kmosko told him several different answers as to whether he had his knife that day. Kmosko said he would bring Preston the knife he usually had, or a picture of the knife, but never did. Kmosko did show Preston a screwdriver, however. The screwdriver is silver and is blackish gray on top. Preston did not find a weapon on Kmosko when he patted him down, but that was not the day of the incident.

{¶8} On cross, Preston stated during the interview at the police department, Cox at one time said Kmosko pointed a finger, and also later said Kmosko pointed "a finger and a knife." Also on cross, Preston testified that the screwdriver Kmosko showed him was just a little bigger than the palm of Preston's hand.

{¶9} Kmosko did not testify nor present any evidence. After his attorney made a Rule 29 motion, the parties began closing arguments. During closing arguments, defense counsel raised a few objections to the special prosecutor's remarks, including one in which she personally addressed defense counsel, and another in which she commented on the truthfulness of Kmosko's statements to Preston.

{¶10} After closing, the court instructed the jury after each summation, that closing statements are "arguments, and not evidence." At the conclusion of the arguments, the trial court reiterated to the jury,

> Just a final reminder, closing statements are arguments. They're not evidence. It's going to be up to you to interpret what you've heard today in terms of the exhibits and the testimony. Just because counsel characterizes it one way or characterizes it another, that doesn't mean it is that. It's up to you to determine those facts.

The court also instructed the jury,

> In this case, the Defendant did not testify. It is not necessary that the Defendant takes the witness stand in their own defense. He has a constitutional right not to testify. The fact that the he did not testify must not be considered for any purpose.

The court also gave instructions for both aggravated menacing and menacing, to which the defense did not object on the day of trial.

{¶11} After deliberation, the jury found Kmosko guilty of the lesser included offense of menacing. Before sentencing, defense counsel made a motion for a mistrial based on some of the statements the special prosecutor made during her closing, specifically that she had said Kmosko lied. The trial court denied the motion for mistrial.

{¶12} After hearing argument, the trial court sentenced Kmosko to probation for two years with a suspended 30-day jail sentence, credit for 3 days served, anger management counseling, court costs and ordered no contact with victim. It is from this judgment that Kmosko appeals, with two assignments of error.

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ERRED BY IMPROPERLY GRANTING AN ORAL MOTION FOR THE SPECIAL JURY INSTRUCTION FOR A LESSER INCLUDED OFFENSE WHEN THE TRIAL COURT ISSUED ITS DECISION AT A FINAL PRETRIAL, BEFORE HEARING EVIDENCE; AND THE EVIDENCE DID NOT SUPPORT AN ACQUITTAL OF THE

GREATER OFFENSE AND A FINDING OF GUILT ON THE LESSER INCLUDED OFFENSE WHEN THE CONCERN OF A COMPROMISE VERDICT WAS CLEAR.

II.      APPELLANT SUFFERED PREJUDICE WHEN THE PROSECUTOR MADE MULTIPLE IMPROPER COMMENTS DURING CLOSING ARGUMENTS.

## I.  First Assignment of Error

{¶13}  In his first assignment of error, Kmosko asserts that the trial court erred in granting the State's oral motion for a special jury instruction of a lesser included offense of menacing.  First, he claims the trial court erred because the motion was not made in writing in accord with the Criminal Rules.  Second, while Kmosko acknowledges that menacing is a lesser included offense of aggravated menacing, he states that the trial court abused its discretion by prematurely ruling the instruction was proper without first hearing the evidence.  Finally, he reasons that the error was not harmless because the decision to issue the instruction resulted in the jury issuing a compromised verdict when he was found guilty of menacing, but acquitted of aggravated menacing, as he was charged in the complaint.

{¶14}  In response, the State concedes that the State's motion for a lesser included offense jury instruction should have been made in writing.  However, the State argues that the trial court's decision to provide the instruction to the jury was not error because menacing is a lesser included offense of aggravated menacing as a matter of law, and the evidence presented at trial is sufficient for the jury to find Kmosko guilty of the crime of menacing, such that the instruction was proper as a matter of fact.

A. Law

{¶15} When the * * * complaint charges an offense including degrees, or if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of an inferior degree thereof, or of a lesser included offense." Crim.R. 31(C); *see also,* R.C. 2945.74; *State v. Conant,* 2020-Ohio-4319, ¶ 15 (4th Dist.). Generally, a trial court determines whether a lesser included offense is warranted by applying a two-part test. *State v. Ferguson*, 2018-Ohio-920, ¶ 39 (4th Dist.), citing *State v. Fouts,* 2016-Ohio-1104, ¶ 76 (4th Dist.), citing *State v. Deanda*, 2013-Ohio-1722, ¶ 6. First, the trial court must determine if the requested charge is a lesser included offense of the charged crime. *Id. citing Fouts* at ¶ 76, *State v. Kidder,* 32 Ohio St.3d 279, 281 (1987). This first step is also called the "statutory elements step" and is purely a legal question. *Conant* at ¶ 16. In determining whether an offense is a lesser included offense of another

> a court shall consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed.

*Id.* citing *State v. Evans,* 2009-Ohio-2974, paragraph two of the syllabus, clarifying *State v. Deem*, 40 Ohio St.3d 205 (1988).

{¶16} Second, the trial court must consider the evidence: "[t]he trial court, after reviewing the evidence, determines whether an instruction on lesser included offenses is appropriate. The trial court must give an instruction on a lesser included offense if, under any reasonable view of the evidence, it is possible for the trier of fact to find the

defendant not guilty of the greater offense and guilty of the lesser offense." *Ferguson* at ¶ 39*., quoting *Fouts* at ¶ 76, citing *State v. Wine*, 2014-Ohio-3948, ¶ 34.

{¶17} A trial court must "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *Ferguson* at ¶ 40, quoting *State v. White*, 2015-Ohio-492, ¶ 46, citing *State v. Comen*, 50 Ohio St.3d 206, paragraph two of the syllabus (1990). In determining whether a lesser included offense instruction is appropriate, "the trial court must consider both the state's evidence and the defense's evidence, and it must view the evidence in the light most favorable to the defendant." *State v. Metters,* 2024-Ohio-1338, ¶ 30 (10th Dist.), citing *State v. Fox*, 2018-Ohio-501, ¶ 21 (10th Dist.). Because a trial court has broad discretion to decide how to fashion jury instructions, we will not reverse its determination absent an abuse of discretion. *Metters* at ¶ 31, citing *State v. Wine,* 2014-Ohio-3948, ¶ 21. An abuse of discretion implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Id.* citing *State v. Beasley,* 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). "[A] lesser included offense instruction is not warranted every time 'some evidence' is offered to support the lesser offense." *Ferguson* at ¶ 42, citing *State v. Shane,* 63 Ohio St.3d 630, 632-633 (1992). Therefore, "[t]he mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged. *Ferguson* at ¶40, quoting *State v. Wilkins,* 64 Ohio St.2d 382, 387 (1980).

B. Analysis

{¶18} At the outset, we address Kmosko's argument that the trial court erred in permitting the State to make an oral request for the lesser included offense, rather than requiring a written request. The State concedes the request should have been made in writing. Crim.R. 30, entitled "Instructions," sets forth the procedure for a trial court's granting of instructions. Crim.R. 30(A) provides, in pertinent part, "[a]t the close of evidence or at such earlier time during the trial as the court reasonably directs, any party may file *written* requests that the court instruct the jury on the law as set forth in the requests." (Emphasis added.) The rule therefore requires the party requesting an instruction to do so in writing. We have determined that it is not an abuse of discretion for a trial court to deny a lesser included offense instruction if it is not in writing. *See State v. Mick,* 2015-Ohio-408, ¶ 28 (4th Dist.); *State v. McFadden*, 2014-Ohio-5294, ¶ 9 (4th Dist.). However, we have not considered before whether a court abused its discretion when it *granted* an oral request for a jury instruction.

{¶19} In the instant case, we do not find the fact that the instruction was requested orally taken alone is reversible error in this particular case. Here, the request was made two days prior to trial, which provided the defense ample time to propose its own instruction or request permission of the court to review the exact instruction it intended to provide the jury. Further, the defense did not specifically object that the request was made orally at the time the State requested the instruction. In addition, Kmosko has not shown how the mere fact the request was made orally impacted the verdict. The defense had notice and the opportunity to be heard regarding the

instruction such that the sole fact it was not made in writing alone does not result automatically in reversible error.

{¶20} Turning now to the two-part test, we first determine whether the requested charge is a lesser included offense of the charged crime, or the "statutory elements step." Kmosko was charged with aggravated menacing, a violation of R.C. 2903.21. Aggravated menacing and menacing share the same elements, except for the degree of harm. The elements of aggravated menacing, in pertinent part are: "[n]o person shall knowingly cause another to believe that the offender will cause *serious physical harm* to the person." R.C. 2903.21. (Emphasis added.) The elements of menacing, in pertinent part, are "[n]o person shall knowingly cause another to believe that the offender will cause *physical harm* to the person." R.C. 2903.22. (Emphasis added.) On appeal, both Kmosko and the State correctly agree that "menacing" is a lesser included offense of "aggravated menacing." Courts have upheld convictions that included a verdict of a lesser included offense of menacing when the charged offense was aggravated menacing. *See, e.g., Walton Hills v. Tate,* 2016-Ohio-697 (8th Dist.); *State v. Britton,* 2009-Ohio-1282 (2d Dist.).

{¶21} Second, we determine whether the request for the lesser included menacing instruction was improper as a matter of fact. To do so, we must examine the difference between "serious physical harm" and "physical harm." "Serious physical harm to persons" means, as applicable to this case (as agreed by the parties), "[a]ny physical harm that carries a substantial risk of death . . . "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity . . . [a]ny physical harm that involves some permanent

disfigurement or that involves some temporary, serious disfigurement." *See* R.C. 2901.01(A)(5)(b)(c)(d). In contrast, "[p]hysical harm to persons" means "any injury, illness, or other physiological impairment, regardless of is gravity or duration." R.C. 2901.22(A)(3).

{¶22} From the evidence presented, Kmosko, whose left hand was in a cast or sling, had a black-handled knife with a silver blade in his right hand, or perhaps a screwdriver, which he pointed at Cox's chest and said, "get your fucking job done!" Kmosko was standing about four feet away from Cox. Kmosko scared Cox; Cox was afraid Kmosko would hurt him with the knife, that he "might" kill him. Cox also demonstrated how Kmosko held the knife while standing close to him. After that, Kmosko again called Cox back on the telephone and three days later Cox reported the incident.

{¶23} Based on the facts presented, the jury could have concluded that Kmosko knowingly caused Cox to believe he would suffer some physical harm. While the testimony conflicted somewhat as to what type of object Kmosko pointed at Cox, such that Cox may have not feared *serious* physical harm, it is patently clear that Cox feared Kmosko would physically harm him in some fashion. In similar cases involving the use of a weapon, courts have found offenders guilty of menacing, but not aggravated menacing. For example, in *State v. Harris,* the Sixth District upheld a sufficiency of evidence challenge to menacing when the victim testified that "[s]he was scared that she would be physically harmed by appellant when he pointed a gun at her and announced he would shoot her." 2024-Ohio-1804, ¶ 25, 31 (6th Dist.). Similarly, the First District upheld a conviction of a lesser included offense of aggravated menacing

issued after a bench trial when the trial court concluded the defendant did not brandish a gun, but nevertheless the defendant told the victim she was "going to get her ass beat and drug through the bar," that though the defendant did not show her a gun, she knew he carried one, and "she believed [the defendant] was going to harm her," causing her to call the police. *State v. Bingham,* 2022-Ohio-2074, ¶ 5-9, 20 (1st Dist.).

**{¶24}** Thus, in the instant case, when Kmosko pointed the sharp object at Cox within a few feet in a menacing fashion and yelled "do your fucking job!", reasonable minds could have found that the conduct and remarks made to Cox constituted a threat of physical harm rather than serious physical harm." *See State v. Britton*, 2009-Ohio-1282, ¶ 52 (2d Dist.). On appeal, however, Kmosko argues the trial court should not have instructed the jury as to menacing because to do so was incorrect as a matter of fact. Kmosko claims that when a defendant puts forth a complete, or "all-or-nothing" defense that a lesser included offense instruction is improper. However, the Supreme Court of Ohio has specifically stated:

> The issue we address in this case is whether a defendant who presents an "all or nothing" defense in a criminal trial has the right to prevent a trial court from giving lesser-included-offense jury instructions. We hold that a criminal defendant does not have the right to prevent a trial court from giving lesser-included-offense jury instructions; whether to include such jury instructions lies within the discretion of the trial court and depends on whether the evidence presented could reasonably support a jury finding of guilt on a particular charge.

*State v. Wine,* 2014-Ohio-3948, ¶ 1.

**{¶25}** The Supreme Court went on to state: "[t]hat trial counsel may decide not to request lesser-included instructions as a matter of trial strategy does not mean the trial court lacks discretion to instruct where the evidence, in fact, merits such an instruction." *Wine* at ¶ 13. While the Supreme Court recognized "the potential perils" of

compromise verdicts, it underscored "that is it the quality of the evidence offered, not the strategy of the defendant, that determines whether a lesser-included-offense charge should be given to a jury." *Wine* at ¶ 22-26. Therefore, "[t]he trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *Wine* at ¶ 34. Here, under any reasonable view of the evidence, it is possible the trier of fact could find the defendant not guilty of aggravated menacing and guilty of menacing. Considering all of the evidence introduced at trial, the trial court did not abuse its discretion in determining a jury instruction of menacing to be appropriate.

**{¶26}** We also take into consideration Kmosko's argument that the trial court prematurely assented to giving the instruction. Crim.R. 30(A) does have a temporal requirement – the rule states, "*[a]t the close of evidence* or such earlier time *during the trial* as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests." (Emphasis added.) The rule specifically contemplates the instruction being requested *at the trial.* In the instant case, it is true that the trial court granted the oral request two days before trial, and before hearing evidence. However, as the State points out, the instruction itself was not given to the jury until after the close of evidence, and Kmosko did not object at that time that the evidence did not support the instruction. Because we determined above that the evidence *does support* the instruction, Kmosko cannot show how he was prejudiced by the trial court's failure to adhere strictly to the Criminal Rules.

{¶27} Thus, we do not find the trial court abused its discretion when granting the State's oral motion to instruct the jury on the lesser included offense of menacing. We therefore overrule this assignment of error.

## II. Second Assignment of Error

{¶28} In his second assignment of error, Kmosko contends that the special prosecutor made several improper statements during closing argument which prejudiced him. He asserts the remarks denied him of due process of law such that this court should reverse the jury verdict.

{¶29} The State responds that although the special prosecutor made improper statements during closing arguments, the special prosecutor's statements constituted harmless error because ample evidence was presented to find Kmosko guilty of menacing beyond a reasonable doubt. The State also points out that the trial court provided a limiting instruction to the jury regarding closing arguments such that Kmosko was not harmed by the State's error.

## A. Law

{¶30} We review a claim for prosecutorial misconduct by determining "whether the remarks were improper, and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Garrett,* 2022-Ohio-4218, ¶ 144, citing *State v. Smith,* 14 Ohio St.3d 13,14 (1984). " 'To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different.' "*State v. Martin*, 2024-Ohio-2334, ¶ 80 (4th Dist.). quoting *State v. Topping,* 2012-Ohio-5617, ¶ 83 (4th Dist.) The "touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Garrett*

at ¶ 144, quoting *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  "The Constitution does not guarantee an 'error-free, perfect trial.' "  *Martin* at ¶ 81, citing *State v. Purdin*, 2013-Ohio-22, ¶ 31 (4th Dist.).  Thus, "[n]ot every intemperate remark by counsel can be a basis for reversal."  *Id.* at ¶ 80, quoting *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990).  Therefore, "an appellate court must not focus on isolated comments but must examine the prosecution's closing argument in its entirety to determine whether the prosecutor's comments prejudiced the defendant."  *Id.*, quoting *Topping* at ¶ 84, citing *State v. Treesh*, 90 Ohio St.3d 460, 466 (2001).

{¶31}  We are aware that "[d]uring closing arguments, the prosecution is generally given wide latitude to convincingly advance its strongest arguments and positions."  *Martin* at ¶ 82, quoting *Topping* at ¶ 83, citing *State v. Powell*, 2012-Ohio-2577, ¶ 149.  However, prosecutors also " 'must be diligent in their efforts to stay within the boundaries of acceptable argument and must refrain from the desire to make outlandish remarks, misstate evidence, or confuse legal concepts.' "  *Id.*, quoting *State v. Fears,* 86 Ohio St. 3d 329, 332 (1999).  Even so, " '[p]rosecutorial misconduct constitutes reversible error only in rare instances.' "  *Id.,* quoting *State v. Purdin*, 2013-Ohio-22, ¶ 31 (4th Dist.), quoting *State v. Edgington*, 2006-Ohio-3712, ¶ 18 (4th Dist.)  "Accordingly, courts ordinarily will not reverse a judgment on the basis of prosecutorial misconduct unless 'the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' "  *State v. Dailey,* 2018-Ohio-4315, ¶ 38 (4th Dist.), quoting *State v. Belton*, 2016-Ohio-1581, ¶ 125, quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974).

B.  Analysis

**{¶32}**  In the instant case, Kmosko's trial counsel objected to some, but not all, of the remarks that he now asks us to consider on appeal.  Some of the remarks he did not object to until after the verdict and then asked for a mistrial because, he claimed, those remarks were improper.  Typically, we would apply a plain error analysis to the remarks for which no objection was made pursuant to Crim.R. 52(B).

**{¶33}**  However, as is explained above, it is necessary for us to examine the special prosecutor's remarks during the entire closing argument.  In addition, the State concedes that at least some of the comments were improper.

**{¶34}**  During the State's initial closing argument, the special prosecutor said, "The [d]efendant was caught lying multiple times.  His story was constantly changing, whether he has a knife, doesn't have a knife, had it that day, didn't have it that day, what it was that could have been in his hand when he was shown irrefutable evidence that there was clearly something in his hand."  The defense did not object to this portion of the argument.

**{¶35}**  Then in rebuttal, the special prosecutor remarked in regard to defense counsel, "He very eloquently gave you a closing argument calling [Cox] a liar in different ways.  He said--."  The defense objected, saying that the State was making a personal attack against counsel.  The trial court asked the special prosecutor to rephrase her remark, and the special prosecutor complied.  Later, during rebuttal, the special prosecutor commented, "What I just think that you need to pay attention to are all of the lies [d]efendant told today."  Defense counsel objected, but did not explain the nature of

his objection.  Before the trial court could respond, the special prosecutor corrected

herself and said:

> All of the lies that the [d]efendant told during the case.  First, he had no
> weapons, then he had a small[-]handle[d] knife, but he never really carried
> it.  Then he maybe had it that day, then he definitely had it that day.  So
> one, two, three, four, five, different versions of if he did or did not have a
> weapon.

The defense did not object to this statement.

**{¶36}**  Finally, at the end of the State's rebuttal argument, the special prosecutor

said, "And what does all of this add up to?  The victim, [Cox] told you the truth of what

happened that day, and the Defendant got caught up in his lies.  Don't let him get away

with it.  Find him guilty.  Thank you."  Defense counsel also did not object to this remark.

**{¶37}**  "As a general matter, an attorney may not express a personal belief or

opinion as to the credibility of a witness."  *State v. Thomas*, 2024-Ohio-2281, ¶ 18 (4th

Dist.), quoting *State v. Thompson*, 2014-Ohio-4751, ¶ 197, citing *State v. Williams,* 79

Ohio St.3d 1, 12 (1997).  When a prosecutor implies knowledge of facts outside the

record or places her credibility in issue, improper vouching occurs.  *Id.*, *citing State v.*

*Myers,* 2018-Ohio-1903, ¶ 145.  In addition, "the state may not 'unfairly suggest[ ] that

the defense's case was untruthful and not honestly presented.' "  *Id.*, quoting *Thompson*

at ¶ 194.  However, even though a prosecutor cannot express an opinion concerning

the credibility of evidence, she "can argue that the character, quality or consistency of

particular evidence or witnesses should be considered when assessing credibility."

*Thomas* at ¶ 19, quoting *State v. Hostacky,* 2014-Ohio-2975, ¶ 47 (8th Dist.).

**{¶38}**  In the case sub judice, as discussed above, the State conceded that many

of the special prosecutor's remarks were improper.  We agree.  We must therefore

determine whether the improper comments and acts of the prosecutor in context of the entire trial to determine whether the comments resulted in an unfair trial to the defendant.

{¶39}  The jury found Kmosko guilty of menacing, a violation of R.C. 2903.22(A), "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."  R.C. 2903.22(A) (effective Sept. 17, 2014).  The Revised Code states "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).  Further, as noted above, "[p]hysical harm to persons" means "any injury, illness, or other physiological impairment, regardless of is gravity or duration."  R.C. 2901.22(A)(3).  In addition, an essential element of the crime of menacing is "the complainant's belief that the offender intends harm to the complainant's person . . . .  It is not enough to demonstrate that the accused made threats, if it is apparent that the complainant did not take the threat seriously."  *State v. Fisher*, 1999 WL 1294826, *3 (4th Dist. Dec. 22, 1999).  Thus, the State must show that the victim subjectively believed there was a possibility of physical harm.  *State v. Szafranski*, 2025-Ohio-1104, ¶ 50 (6th Dist.), citing *State v. McConnaughey,* 2021-Ohio-3320, ¶ 41 (1st Dist.).  " 'Menacing can be implied by the offender's actions without a verbal threat, and under ordinary circumstances *[t]he key is whether the victim genuinely believes that he or she is facing physical harm* to person or property."  *Id.*  (Emphasis added and brackets in original.) citing *State v. Harvey*, 2023-

Ohio-4454, ¶ 29 (6th Dist.), quoting *State v. Whitehead*, 2019-Ohio-5141, ¶ 24 (2d Dist.); *State v. Myers*, 2008-Ohio-1913, ¶ 14 (9th Dist.).

**{¶40}** The evidence in this case is Kmosko entered the bathroom where Cox was working, yelled at him while only a few feet away, and pointed a sharp object, which Cox believed was a knife, telling him to "do his fucking job!" While the specific words Kmosko spoke were not a threat, per se, the entire circumstances around the incident the State presented support the jury's verdict. The jury saw Cox demonstrate how Kmosko pointed the object at him. Cox's description of how Kmosko yelled profanity, the fact the incident occurred in an isolated place where no one else was around, in addition to Cox's clear testimony that he believed he would be hurt or killed or stabbed, are sufficient facts, if believed, to sustain a conviction for menacing.

**{¶41}** But, in addition to Cox's testimony, there was other evidence. The fact that Cox subjectively believed Kmosko would hurt him is supported by the evidence that he went and reported the incident to the police, and his further testimony that he was still afraid of Kmosko at the time of the trial. Additionally, Kmosko at various times admitted to Preston that he had *some* object in his hand while in the restroom with Cox. The video evidence also shows that some incident occurred between Cox and Kmosko in the restroom and that Cox had something sharp, shiny and metallic in his hand. Kmosko admitted that he had something in his hand in the restroom. Thus, the State presented a substantial amount of evidence of Kmosko's guilt.

**{¶42}** While the trial court did not issue a specific curative instruction that the special prosecutor's remarks were inappropriate, the trial court did instruct the jury multiple times that closing arguments are not evidence and told jurors it was up to them

to determine the facts.  Further, the trial court also emphasized to the jury that the burden of proof rested squarely on the State, that the defendant had a right not to testify, and the fact he did not testify could not be considered for any purpose.  " 'A presumption always exists that the jury has followed the instructions given to it by the trial court.' "  *State v. Purdin,* 2013-Ohio-22, ¶ 36 (4th Dist.), quoting *State v. Murphy,* 2010-Ohio-5031, ¶ 81 (4th Dist.), quoting *Pang v. Minch,* 53 Ohio St.3d 186, paragraph four of the syllabus (1990).

{¶43}  Kmosko argues on appeal that the special prosecutor's comments resulted in the jury inappropriately considering his character for truthfulness, rather than whether he actually committed the offense.  But the special prosecutor's comments taken in context appear instead to apply to the element of whether Kmosko knowingly threatened Cox.  The testimony from Preston was that Kmosko told more than one version of whether he had a knife, a screwdriver, a can opener.  In addition, his statements to Preston appear to have changed when he was confronted with video evidence.  The fact that Kmosko's statements to Preston differed substantially could be seen by the jury as Kmosko's attempt to cover up something he had done, knowing his conduct caused Cox to fear physical harm.

{¶44}  We therefore find that although Kmosko has established that certain remarks the special prosecutor made during closing were inappropriate, he has not established prejudice by showing that a "reasonable probability exits that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. *See State v. Andrews*, 2024-Ohio-5023, ¶ 54 (4th Dist.), citing *State v. Porter,* 2012-Ohio-1526, ¶ 20 (4th Dist.).  Here, "it appears beyond a reasonable doubt that the jury

would have found the defendant guilty even without the improper comments." *See State v. Thompson,* 2014-Ohio-4751, ¶ 198. Reversal for improper remarks by a prosecutor "is warranted only if the prosecutorial misconduct 'permeates the entire atmosphere of the trial.' " *State v. Searfoss,* 2019-Ohio-4619, ¶ 139 (6th Dist.), quoting *State v. Beebe,* 2007-Ohio-3746, ¶ 8 (4th Dist.). Therefore, we overrule Kmosko's second assignment of error.

CONCLUSION

{¶45} Crim.R. 30(A) requires that a request for a lesser included jury instruction must be in writing, at some time during trial. However, in the instant case, Kmosko has not shown how the procedural errors in this case affected the outcome of the trial. The trial court properly provided a lesser included offense menacing jury instruction. We also find that, although the special prosecutor's remarks during closing argument were improper, they did not, in context, result in the defendant receiving an unfair trial. Therefore, we find both Kmosko's assignments of error to be without merit and affirm the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the ATHENS COUNTY MUNICIPAL COURT to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.: Concur in Judgment and Opinion.


For the Court,


BY: _____
        Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**